## FESENMEYER et al. v. SALT SPRINGS NAT. BANK et al.

### No. 27.

Circuit Court of Appeals, Second Circuit.

Nov. 8, 1937.

Keith F. Driscoll, of Syracuse, N. Y., for appellants.

Clifford H. Searl, of Syracuse, N. Y., for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This action was brought by the plaintiffs as the sole beneficiaries of a trust of which the Salt Springs National Bank of Syracuse, N. Y., organized and existing as a corporation under the National Bank Act (12 U.S.C.A. § 21 et seq.), but now in process of liquidation, was the trustee to assert a lien upon a fund in the hands of the superintendent of banks of the state of New York.

The Salt Springs National Bank had before August 20, 1930, been duly authorized to act as a fiduciary under the provisions of 12 U.S.C.A. § 248 (k), when on that day it entered into an agreement in writing with Josephine Fesenmeyer that was called a declaration of trust which pro-

600

vided in part that the bank as trustee would accept from said Fesenmeyer the sum of $16,000 in cash to be by it "deposited in the Salt Springs National Bank, or its successors, during the term of this Trust, and to bear at least the same rate of interest as is paid upon savings accounts." The arrangement was to continue during the lifetime of said Fesenmeyer, whose agent was to be paid the interest quarterly, and upon her death the principal and accumulations then undistributed were to be paid, less "any proper fees to which the Trustee may be legally entitled," in stated proportions to ascertainable descendants then living.

The bank took the money under this agreement; placed it on deposit with itself; and then through its trust department used it to purchase certificates of participation in mortgages on which it was paid interest in excess of the amount it paid on its savings deposits. It duly paid over to Fesenmeyer's agent the interest so received less fees it deducted for its services as trustee for a time and then sold the securities it purchased. After that, and up to December 31, 1932, it paid interest at the agreed rate, but since then has paid nothing.

On January 22, 1934, upon action by the United States Comptroller of the Currency, a receiver, whose successor is now defending this action, was appointed for the bank which has since been in process of liquidation under the provisions of the National Bank Act.

The bank had, before it received the money from Mrs. Fesenmeyer on the terms above outlined, complied with the state law as authorized by the Federal Reserve Board under 12 U.S.C.A. § 248 (k), in making a deposit of securities with the New York superintendent of banks in accordance with the provisions of section 39-a of the New York State Banking Law (Consol. Laws N.Y. c. 2). The state law provides that such securities shall be held by the superintendent "as trustee for the beneficiaries of private and court trust funds held by such national bank." And the claim of the plaintiffs is that they are the beneficiaries of private trust funds which are so protected. The Fesenmeyer account was carried on the books in the trust department of the bank and was charged with the fees of the bank as trustee before payments of earnings were made to Mrs. Fesenmeyer.

It is urged that the court was without jurisdiction upon the broad ground that the Comptroller of the Currency under the statutory provisions for the liquidation of national banks (12 U.S.C.A. § 192) has absolute control of the assets of an insolvent bank to the extent that his "control cannot be disturbed by any court in the absence of fraud or abuse of discretion." Like most generalities, the proposition is but partly true and has no application here. The Comptroller has exclusive jurisdiction, not subject to review, of all matters properly within his discretion. Liberty Nat. Bank v. McIntosh (C.C.A.) 16 F.(2d) 906. But the sole discretionary power to determine the rights of beneficiaries of a trust of which an insolvent national bank is trustee are nowhere conferred upon him. And so the jurisdiction of the court in that respect is unimpaired. In Carcaba v. McNair (C.C.A.) 68 F.(2d) 795, jurisdiction in an action much like the instant case was taken for granted.

On the merits, the first duty which confronts us is to decide whether any trust at all was created, and the second whether the fund is protected as claimed. If the language of the agreement alone were decisive on the first question, nothing would appear to support the contention that any trust was created. True it is that the bank was called a trustee, and the money was said to be taken in trust, but equally true is it that the actual agreement was expressly stated to be that: "The trustee shall forthwith cause said sum of $16,000.-00 to be deposited in the Salt Springs National Bank, the same to be kept on deposit with said Salt Springs National Bank, or its successors, during the term of this trust, and to bear at least the same rate of interest as is paid upon savings accounts. * * *"

That language itself does no more than show an agreement to place the money on deposit with the so-called trustee bank and keep it there; the bank merely accepting a deposit to be subsequently distributed at a time to be determined upon the happening of a future event certain and agreeing to pay interest meanwhile upon it. Calling itself a trustee in the agreement, or the deposit a trust fund, would not make it a trustee or create a trust if the legal effect of the transaction were otherwise. And on the face of the agreement nothing but the relationship of debtor and creditor

was brought into existence as when a bank accepts a deposit to hold at interest.

But the agreement must be read in the light of the provisions of the statute which applied to this bank at the time it was made. It had received its permit to act as a fiduciary under 12 U.S.C.A. § 248 (k), and was exercising at least some of those powers, for it had deposited securities with the state superintendent of banks. Of course, it was bound to comply with the provisions of the subsection. Having promised to take, and having received, this money for the purposes stated, it did undertake to act in a fiduciary capacity as a trustee unless the provision for depositing the money with itself necessarily created only the relationship of debtor and creditor. And because of statutory provisions that result did not follow. The kind of deposit it could make as a national bank exercising, as it was, any or all of the powers enumerated in subsection (k), was one by which it should "segregate all assets held in any fiduciary capacity from the general assets of the bank." Consequently the agreement to deposit money which it had promised to hold as trustee gave it no right to treat the fund as a general deposit or to hold it as a debtor merely. Nor did the bank undertake to do so. It invested the money in specific securities, and so long as it held them paid over the income from these securities less its fees as trustee. When those securities were sold, it held the proceeds on which it paid interest, so long as it paid any, after deducting its fees as trustee. It dealt with it at all times through its trust department. Under these circumstances it is plain enough that the right to deposit with itself permitted by the agreement was the limited one permitted by the law and did not prevent the assumption by the bank of all the duties and liabilities of a trustee rather than merely those of a debtor. Compare Carcaba v. McNair, supra.

It is clear, also, that this is a private trust which has not been performed because of the default of the trustee. The bank has been in default since December 31, 1932. Subsection (k) above mentioned provides in respect to the securities in the hands of the state superintendent of banks that they "shall be held for the protection of private and court trusts, as provided by the State law." The state law applicable, section 39-a of the New York State Banking Law, provides that such securities shall be held for the protection of such a trust as this. They are, therefore, held subject to a lien for the protection of this trust from what would otherwise be the result of the trustee's breach of duty.

Of course the lien is not superior to other like liens, if there are any, and, if the fund should be insufficient to satisfy all so entitled to share in it, the plaintiffs will receive upon distribution only their proportionate part. However, this record does not show that the fund will be insufficient, and so no error appears.

Judgment affirmed.